UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SwissMarine Pte. Ltd.,<br>Plaintiff,<br>vs.<br><br>Hartree Marine Fuels, LLC,<br>Defendant. | 26-cv-7341<br><br>Admiralty Rule 9(h) |

**COMPLAINT**

Plaintiff SwissMarine Pte. Ltd. ("SwissMarine") files this Complaint against Defendant Hartree Marine Fuels, LLC ("Hartree"), stating admiralty or maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and alleges as follows in this action, on knowledge as to its own acts, and on information and belief as to the acts of others, for damages as a result of Hartree's wrongful breach of a maritime contract for the sale of marine fuel to M/V ETG MISHIMA ("Vessel"). Despite the contract's requirements, Hartree sold marine fuel that did not meet the agreed standard and thus sold off-specification and unusable fuel to SwissMarine. As such, SwissMarine suffered damages as a result of Hartree's wrongful breach.

**PARTIES**

1. SwissMarine is a private limited company, registered with the government of the Republic of Singapore, and headquartered in Singapore.

2. Hartree is a domestic limited liability company, formed under the laws of the State of Delaware, and headquartered in New York, New York.

**JURISDICTION AND VENUE**

3. This is an admiralty or maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1333.

5. The Court has personal jurisdiction over Hartree.

6. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b)(1).

**FACTS**

SwissMarine's Charter of the Vessel

7. On February 5, 2025, SwissMarine, as charterer, entered into a charterparty for the Vessel.

Bunker Sales Contract Between SwissMarine and Hartree

8. On August 21, 2025, Swiss Marine, as buyer, sent Hartree, as seller, a Bunker Confirmation for 900 to 1,100 metric tons of RMG 380 (0.5 % Sulphur) marine fuel ("bunkers") at a price of USD 496.00 per metric ton for the Vessel.

9. The Bunker Confirmation stated that the standard for the bunkers was International Organization for Standards ("ISO") 8217:2017.

10. On August 21, 2025, Hartree, as seller, sent Swiss Marine, as buyer, a Sales Order Confirmation for 900 to 1,100 metric tons of RMG 380 (0.5 % Sulphur) marine fuel at a price of USD 496.00 per metric ton for the Vessel.

11. The Sales Order Confirmation stated that the standard for the bunkers was ISO 8217:2017.

12. The Sales Order Confirmation stated that "Hartree Marine Fuels, LLC General Terms and Conditions (2021 edition)" (the "General Terms and Conditions") were incorporated by reference in, and made a part of, this Sales Order Confirmation (collectively, "Sales Contract").

13. On information and belief, the 2021 edition of the General Terms and Conditions is no longer available to the public.

14. Clause 4 of the April 2022 edition of the General Terms and Conditions states,

4. QUALITY OF PRODUCT:

Any and all Product shall be of the quality generally offered by Seller at the time and place of delivery, for the particular grade or grades ordered by Buyer, unless otherwise specified in the Confirmation. If the Confirmation refers to a particular specification, the analysis of any test results shall make allowances for generally recognized industry standards of repeatability and reproducibility. Any test results within such allowances shall be deemed to meet the specification referenced. Where specifications in the Confirmation designate a maximum value, no minimum value is guaranteed, and where specifications in the confirmation designate a minimum value, no maximum value is guaranteed; in each case, unless expressly stated in the Confirmation.

Any and all Product may contain bio-derived components generally acceptable in the petroleum industry. Buyer shall have the sole responsibility for the selection of suitable Product for use in the vessel being supplied (the "Receiving Vessel") or other receiving facility, and warrants that any Product selected is suitable for use in the Receiving Vessel or other receiving facility. The relevant quality of Product is the quality at delivery and prior to appropriate treatment by Receiving Vessel or other receiving facility for use. Any certificate of quality ("COQ") provided shall only be indicative of the typical quality of Product and Seller does not in any way guarantee that Product shall meet or match the specifications stated in any COQ. ANY AND ALL OTHER CONDITIONS AND WARRANTIES, WHETHER EXPRESS OR IMPLIED, INCLUDING, WITHOUT LIMITATION, THE WARRANTIES OF MERCHANTABILITY, USE AND FITNESS FOR A PARTICULAR PURPOSE, ARE EXPRESSLY EXCLUDED AND DISCLAIMED.

15. Clause 7 of the April 2022 edition of the General Terms and Conditions states, in relevant part,

7. MEASUREMENT, TESTING AND CLAIMS:

. . .

(c) In the event of a claim by Buyer, Buyer shall identify the allegedly off-specification parameters and the sample(s) in Seller's or its physical supplier's possession shall be tested for the allegedly off-specification parameters only and analyzed by an independent surveyor, located in the country (and where available, port) of supply, whose results shall be final and binding on both Buyer and Seller, absent fraud or manifest error.

(d) Seller shall appoint the independent surveyor, and Seller and Buyer shall bear the independent surveyor's fee equally, save that if the independent surveyor's

analysis does not show any deviations from the quality specified in the Confirmation, Buyer shall bear the independent surveyor's fee in its entirety.

. . .

(h) It is the duty of Buyer to take all reasonable actions to eliminate or minimize any damages or costs associated with any off-specification or suspected or allegedly off-specification Product. In such circumstances, Buyer shall cooperate with Seller in achieving the most cost-effective solution, including the consumption of Product after treatment, blending and/or special handling. In the event that Product is off-specification and cannot be consumed by the Receiving Vessel, Buyer's remedies shall be limited exclusively and solely to the replacement of the non-conforming Product by Seller. If Buyer removes any or all Product from the Receiving Vessel without the express prior written consent of Seller, then all such removal and related costs shall be solely for Buyer's account. IN ANY EVENT, AND NOTWITHSTANDING ANY OTHER PROVISION IN THESE GTCs, SELLER'S LIABILITY FOR ANY CLAIMS, WHETHER ARISING FROM QUALITY, QUANTITY, ACCIDENT, DELAY, SPILL OR ANY OTHER CAUSE EITHER IN CONTRACT OR TORT (INCLUDING NEGLIGENCE), SHALL TO THE FULLEST EXTENT PERMISSIBLE UNDER APPLICABLE LAW NOT EXCEED THE LESSER OF: (1) THE PRICE OF THAT PORTION OF PRODUCT SOLD ON WHICH LIABILITY IS ASSERTED; OR (2) THE AMOUNT OF USD 500,000. FURTHERMORE, NEITHER SELLER NOR SUPPPLIERS [sic] SHALL HAVE ANY LIABILITY TO THE BUYER UNDER OR IN CONNECTION WITH ANY CONTRACT FOR (1) ANY DEMURRAGE, OFFHIRE OR OTHER VESSEL DELAY OR (2) LOSS OF ACTUAL OR ANTICIPATED PROFIT OR (3) LOSSES CAUSED BY BUSINESS INTERRUPTION OR (4) LOSS OF GOODWILL OR REPUTATION OR (5) FOR INDIRECT, SPECIAL, INCIDENTAL, EXEMPLARY, PUNITIVE OR CONSEQUENTIAL DAMAGES WHETHER OR NOT FORSEEABLE [sic], INCLUDING, BUT NOT LIMITED TO, DAMAGES ARISING FROM THE EXERCISE OF SELLER'S RIGHT TO SUSPEND AND/OR TERMINATE DELIVERY OF PRODUCT.

16. Clause 15 of the April 2022 edition of the General Terms and Conditions states, in relevant part,

15. OTHER PROVISIONS:

(g) Neither these GTCs, nor any Confirmation, shall be altered or amended except by an instrument in writing signed by or on behalf of Seller. Seller may amend these GTCs from time to time without notice to Buyer. Any such amendment shall be effective and apply with respect to any and all Transactions in respect of which a Confirmation is sent after the effective date of the amended GTCs.

17. Clause 18 of the April 2022 edition of the General Terms and Conditions states,

> 18. LAW, VENUE AND JURISDICTION, WAIVER OF JURY TRIAL:
>
> These GTCs and each Confirmation applicable to a Transaction shall be governed by and construed in accordance with the general maritime law of the United States of America, the applicable federal laws of the United States of America, and, in the event that such laws are silent on the disputed issue, the laws of the State of New York, without reference to any conflict of laws rules which may result in the application of the laws of another jurisdiction.
>
> The General Maritime Law and the applicable federal laws of the United States of America shall apply with respect to the existence of a maritime lien, regardless of the country in which Seller takes legal action.
>
> Each of Seller and Buyer hereby irrevocably submits to the exclusive jurisdiction of the United States District Court for the Southern District of New York or, if such court does not have jurisdiction or shall not accept jurisdiction, any court of general jurisdiction in and for the County of New York in the State of New York for the resolution of any dispute between Buyer and Seller arising from or related to the construction, meaning or effect of the Confirmation and/or these GTCs, or the rights and liabilities of Buyer and Seller in respect of a Transaction or arising under a Confirmation and/or these GTCs, or connected therewith.
>
> Buyer and Seller each irrevocably waive, to the fullest extent it may effectively do so, the defense of an inconvenient forum or its foreign equivalent to the maintenance of any action in any such court. Notwithstanding the foregoing, Seller shall be entitled to bring suit in any jurisdiction and shall be entitled to avail itself of all remedies under maritime or other law to obtain jurisdiction and/or security for its claims against Buyer, its agents or affiliates, the Receiving Vessel, her owners and charterers and any of their respective agents, servants or assigns, including but not limited to vessel arrest and attachment procedures under the Supplemental Rules of Civil Procedure for Certain Admiralty and Maritime Claims or any similar laws, rules or statutes in any jurisdiction.
>
> BUYER AND SELLER WAIVE ANY RIGHT EITHER OF THEM MIGHT HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING FROM OR RELATED TO THESE GTCs OR ANY TRANSACTION. BUYER AND SELLER AGREE THAT THE CONVENTION ON THE INTERNATIONAL SALE OF GOODS 1980 SHALL NOT APPLY TO ANY TRANSACTION.

<u>Bunkers Delivery</u>

18. On August 30, 2025, the bunkers were supplied to the Vessel.

19. At the time of delivery, a Bunker Delivery Note was issued.

20. The Bunker Delivery Note listed the following four samples as being taken, sealed, and distributed: 588511 (Ship sample); 588512 (Ship MARPOL sample); 588513 (Barge sample); and 588514 (Barge Supplier sample).

21. After delivery, SwissMarine paid the invoice for the bunkers.

SwissMarine's Quality Claim

22. On September 10, 2025, SwissMarine served a quality claim on Hartree, stating that a test of the bunkers found catalytic fines ("catfines"), which is the value of Aluminum plus Silicon, of 96 mg/kg (Aluminum 43 mg/kg; Silicon 53 mg/kg).

23. The ISO 8217:2017 standard, among other things, sets the maximum for catfines as 60 mg/kg.

24. On September 11, 2025, Hartree proposed to test sample number 58814 at one of three laboratories: (1) SGS; (2) Camin; and (3) Intertek and requested if SwissMarine would send a representative to witness the test.

25. On September 17, 2025, SwissMarine requested to test sample number 58814, which was a seller's retained sample per the Bunker Delivery Note, at Intertek.

26. On September 18, 2025, SwissMarine stated that it would send a representative to be present during the test ("SwissMarine's Representative").

Test of Sample Number 58814

27. On September 20, 2025, Intertek completed a test of sample number 58814 in the presence of SwissMarine's representative.

28. The results of the test found catfines of 84 mg/kg (Aluminum 9 mg/kg; Silicon 75 mg/kg).

Hartree's Refusal to Address Its Breach

29. On or about September 23, 2025, Hartree refused to remove and replace the bunkers.

30. On or about October 11, 2025, Hartree also refused to consent to SwissMarine's removal of the bunkers.

31. As a direct result of Hartree's failure to cooperate with the replacement of the bunkers and to mitigate any risk to the safety of the crew and the Vessel due to Hartree sale of off-specification bunkers, SwissMarine incurred estimated damages in the amount of USD 928,657.28 in principal.

**CAUSE OF ACTION**
**Breach of Contract**

32. SwissMarine adopts and incorporates by reference paragraphs one through thirty-one as if fully restated.

33. "It is 'a fundamental feature of admiralty law, that federal admiralty courts sometimes do apply state law.'" *Serifos Mar. Corp. v. Glencore Singapore Pte Ltd.*, No. 22 CIV. 8012 (LGS), 2023 WL 6317996, at *2 (S.D.N.Y. Sept. 28, 2023), aff'd, No. 24-1303-CV, 2025 WL 1554798 (2d Cir. June 2, 2025) (quoting *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 546 (1995); accord *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 315–16 (1955) (holding that in absence of admiralty rule created by Congress or federal courts, state law governs)); *see also St. Clair Marine Salvage, Inc. v. Bulgarelli*, 796 F.3d 569, 575 (6th Cir. 2015) ("For admiralty cases alleging breach of contract, 'we look both to the federal maritime law of contracts as well as to general principles of contract interpretation;'" quoting *Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd.,* 525 F.3d 409, 421 (6th Cir. 2008)).

34. "To state a breach-of-contract claim under federal maritime law, as here, a plaintiff must set forth sufficient facts showing: '(1) a valid contract; (2) a material breach; and (3) damages.'" *Pan Ocean Co., Ltd v. World Fuel Servs. (Singapore) Pte, Ltd*, 684 F. Supp. 3d 1261, 1264 (S.D. Fla. 2023) (quoting *F.W.F., Inc. v. Detroit Diesel Corp.*, 494 F. Supp. 2d 1342, 1360 (S.D. Fla. 2007), aff'd, 308 F. App'x 389 (11th Cir. 2009)).

35. "Under New York law, to allege breach of contract the plaintiff must allege: '(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages.'" *Mayweather Promotions, LLC v. PAC Ent. Worldwide LLC*, No. 21-CV-4378, 2022 WL 3997014, at *6 (S.D.N.Y. Sept. 1, 2022) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015)).

36. The Sales Contract between SwissMarine and Hartree was a valid contract.

37. SwissMarine performed under the Sales Contract.

38. Hartree sold bunkers that did not meet the ISO 8217:2017 standard.

39. Hartree's failure to supply bunkers that met the ISO 8217:2017 standard was a material breach of the Sales Contract.

40. SwissMarine suffered damages as a result of Hartree's material breach and failure to cooperate, to include, but not limited to, the costs of the replacement of the off-specification bunkers.

**Wherefore**, SwissMarine prays that judgment be entered in SwissMarine's favor and against Hartree in the estimated amount of USD 928,657.28, plus costs, interests, and expenses, and for such other and further relief as is just and appropriate.

Date: August 28, 2026

Respectfully submitted,

/s/ Edward W. Floyd
EDWARD W. FLOYD
Floyd Zadkovich (US) LLP
33 East 33rd St.
9th Floor, Suite 905
New York, New York 10016
Telephone: (917) 999-9614
E-mail: ed.floyd@floydzad.com

*Counsel for Plaintiff*